Brinkerhoee, J.
The waters of White Oak creek are so winding and serpentine in their course as to form, in the neighborhood of these mills, what, for the sake of convenience, may be called a peninsula. The upper mill is above the peninsula; the middle mill, belonging to the plaintiff below, is on the peninsula ; and the lower mill, belonging to the defendant below, is below the peninsula. A race-way, or tunnel, has been made from the dam of the lower mill, across the peninsula, so as to tap the creek above the dam of the middle mill, and partially to divert from it the water which would otherwise flow to it. And this is the injury complained of in the action below.
At the time this race-way was dug and put to use, Edward Thompson owned the upper and lower mills only; but, as he subsequently acquired the title to all three of the mills, and to all the lands affected by them and their appurtenances; and inasmuch as he, during the time he owned all the mills, left the race-way as an appurtenance in fact to the lower mill, and at the expense of the middle mill, the case is the sam *17 in principle, it seems to me, as if he had dug the race-way and put it to use at a time when he was the owner of all the mills.
If, at the time he was the owner of all the mills, he had filled up this race, or had in any way stopped the flow of water through it, and had thus discontinued its use, the case-would have been very different from what it now is. In that case, he would have clearly indicated his intention to sever,, and would, as a matter of fact, have severed the connection between the race and the lower mill, and the race would have-ceased to exist as an appurtenance to the lower mill, both as a matter of fact and in law.
But, being at the same time the absolute proprietor of all the mills, and, as such, having the right to do with them what he pleased, he continued the existence and the use of the race as an actual appurtenance to the lower mill, until, by simultaneous conveyances, he granted the mills with their appurtenances severally to his three sons, as before stated, all the-conveyances being otherwise silent in respect to this race.
On this state of facts, it seems to us clear, on every principle of reason and common sense, that he must have intended to grant to his sons respectively, and they must have expected to receive, each his mill with its appurtenances as it actually existed in fact and in use at the time of the conveyances — no more, and no less; and this obvious intention on the part of the grantor, and reasonable expectation on the part of the grantees, furnish the exact measure of the rights of the grantees-inter se, and of all parties holding under them respectively. This seems to us to be the reason of the case, and the authorities bearing upon the question are uniformly accordant to the same effect. Angelí on Water Courses, secs. 191,192, and cases there cited.
As early as the reign of James I, in Nicholas v. Chamberlain, Cro. Jac. 121, it was ruled by “ all the court ” of kings-bench, that “ if a lessee for years of a house and land erect a conduit upon the land, and, after the term determines, the lessor occupies them together for a time, and afterward sells the house with the appurtenances to one, and the land to another,, *18 the vendee shall have the conduit and the pipes, and liberty to amend them.” We are hot aware that the ruling in Nicholas v. Chamberlain has ever been seriously questioned; and it fully justifies the ruling of the court below in this case.
The case of Kilgour v. Ashcom, 5 Har. & J. 82, is very ■closely analogous to the one before us; the only difference being this, that there the parties simultaneously inherited from a common ancestor, and here they took title under simultaneous conveyances from a common grantor. In that case, “ A. died intestate, siezed of a tract of land on which there was a gristmill then in operation. On a division of the land under the act to direct descents, amongst his heirs, the mill was on the part allotted to B., the dam of which covered a portion of the part allotted to C.” It was held — “ that B. had a right to use the mill and dam in the same way, and to the same extent, as they had been used by A. in his life-time.”
The questions presented in this case, and kindred questions, ■have been very fully considered by this court in the case of Morgan v. Mason, 20 Ohio Rep. 401; and it was decided in accordance with the opinions we have here expressed.
We think that the law of the case was correctly given to the jury by the court below and that the judgment ought to be affirmed.
Peck, C.J., and Gholson, Scott and Ranney, JJ., concurred.